IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Civil Action No. **09-CV-60269-Hurley-Hopkins**

CALABRESE STEMER LLC,
a Florida limited liability company

　　and

CHARGE NOTIFICATION SERVICES CORP., INC.
a Florida corporation

　　Plaintiffs,

vs

VISA, Inc.,
a Delaware corporation headquartered
in San Francisco, California

　　Defendant.



FILED by VT D.C.
ELECTRONIC

**Feb. 19, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

---

### VERIFIED COMPLAINT AND JURY DEMAND

---

COME NOW, Plaintiffs, Calabrese Stemer LLC ("Calabrese/Stemer") and Charge Notification Services Corporation, Inc. ("C.N.S.C."), collectively referred to as "Plaintiffs" herein, by their attorneys, Lerner Greenberg Stemer LLP, and state as follows:

### JURISDICTION

1.　　This is an action for patent infringement arising under 35 U.S.C. § 271 brought by Calabrese/Stemer and C.N.S.C. against Defendant, VISA, Inc. ("Defendant" or "VISA"). The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1338 as it involves a substantial claim arising under the patent laws of the United States. The Court has personal jurisdiction over VISA pursuant to Fed.R.Civ. 4(k)(1) and/or the Florida Long Arm

Statute §48.193 because VISA conducts business in Florida and offers its infringing product for service in Florida.

## VENUE

2. Venue is proper in the United States District Court of the Southern District of Florida pursuant to 28 U.S.C. §§ 1391 and 1400(a) and Florida Statute § 47.01, on the grounds that the infringement and other wrongful acts that gave rise to this claim occurred in this district, and on the grounds that VISA and its agents at all times material hereto do business in the State of Florida within this District.

## THE PARTIES

4. Calabrese/Stemer is the owner, by way of an assignment executed by the inventors, of the invention described and claimed in U.S. Patent No. US 7,357,310 B2 which issued on April 15, 2008 (the "'310 Patent"). Calabrese/Stemer has an office at 2445 Hollywood Blvd., Hollywood, Florida, 33020.

5. C.N.S.C. is the holder of an exclusive license to the '310 Patent, including a contractual obligation to defend against and a right to bring suit for infringement.

6. Plaintiffs are informed and believe, and based thereon allege, that VISA, is, and at all relevant times herein was, a corporation duly organized and existing under the laws of the State of Delaware and having its headquarters and principal place of business located at San Francisco, California. VISA is in the business of offering credit card services directly to the public and through various agents ("issuing banks").

## FACTUAL ALLEGATIONS

7. On March 11, 2005 the inventors Gerry Calabrese and Werner Stemer, both of Fort Lauderdale, Florida, filed a United States Patent Application in the United States Patent and

2

Trademark Office ("USPTO") for a "Mobile Phone Charge Card Notification and Authorization Method."

8. On April 15, 2008, the United Stated Patent and Trademark Office duly and legally issued to Gerry Calabrese and Werner Stemer United States Patent Number US 7,357,310 B2 (the "`310 Patent") for "the "Mobile Phone Charge Card Notification and Authorization Method." A true copy of the `310 Patent is attached and incorporated herein as Exhibit A.

9. Gerry Calabrese and Werner Stemer subsequently executed an assignment transferring ownership of the '310 Patent to the plaintiffs, Calabrese/Stemer, who is and continues to be the sole owner of the '310 Patent and the invention claimed therein.

10. C.N.S.C. holds an exclusive license in the '310 Patent, including a contractual obligation to defend against and a right to bring suit for infringement.

11. Neither Calabrese/Stemer nor C.N.S.C. has licensed or assigned any rights under the `310 Patent to VISA, nor to any agent of VISA, nor to anyone else.

12. The `310 Patent claims pertain to a charge card transaction method. When a charge card account number is presented at a merchant for a purchase, the merchant sends an authorization request to the issuing bank, to assure that the card and the charge are authorized. At the same time that the issuing bank responds to the merchant with the authorization, the bank also sends a notification to the card holder, advising that a purchase is under way or has just been authorized. Should it turn out that the purchase is not being effected by or under the authority of the card holder, he or she may immediately react. For instance, the card holder may immediately notify the bank that a fraudulent purchase may be under way.

13. VISA, directly and through several agent banks, offers to perform services that would directly and literally infringe several claims of the '310 Patent. See, *Visa and Leading North*

3

*American Banks Launch Transaction Notification Pilot*, a press release issued by Visa dated Aug. 18, 2008, reporting that Visa and eight North American Banks (PNC Bank, SunTrust Bank, U.S. Bank, Wachovia, and Wells Fargo, Royal Bank of Canada, TD Bank Financial Group, and Vancity) have agreed to initiate a program to test the delivery of real-time notification alerts on Visa accounts. A printout of the Visa-published press release is attached hereto as Exhibit B.

14. Plaintiffs are informed and believe, and based thereon allege, that VISA is responsible for and "offers for sale," as defined in 35 U.S.C. § 271, the invention claimed in the '310 Patent throughout the United States, including but not limited to, the State of Florida, within this District.

15. VISA was given actual notice of infringement pursuant to 35 U.S.C. § 287(a) by way of various e-mail and telephone exchanges with Jubin Dana, Esq., attorney for Visa, during 2008 and with Susan Whitecotton, Esq., attorney for Visa, in late 2008 and early 2009. Nonetheless, VISA has continued to pursue and offer for sale the infringing process. VISA has acted in bad faith by persisting in offering the accused process after having been put on notice and during the ongoing contacts with representatives of C.N.S.C. during 2008 and 2009.

16. In addition, a copy of this Complaint delivered to VISA constitutes actual notice of infringement pursuant to 35 U.S.C. § 287(a). Should VISA continue to offer for sale the services protected in the '310 Patent after receiving this Complaint, VISA's acts will constitute bad faith.

### FIRST CLAIM FOR RELIEF

17. Plaintiffs incorporate by reference paragraphs 1 through 16, inclusive, as though fully set forth herein.

18. Plaintiffs hold all rights, title and interest in and to the `310 Patent, attached and incorporated herein as Exhibit A.

4

19. VISA has infringed and continues to infringe claim 1 and several other claims of Plaintiffs' `310 Patent under 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the offering for sale and/or sale of a process covered by the `310 Patent without the authority and without a license from Plaintiffs.

20. VISA has had actual knowledge of the '310 Patent since at least July 2008. Notwithstanding VISA's knowledge that its accused method was, and is, an infringing method of Plaintiff's `310 Patent, VISA continued to perform the claimed method, through "several North American banks," within this judicial district and elsewhere in the United States. Therefore, Plaintiffs are entitled to damages adequate to compensate them for VISA's infringement, but in no event less than a reasonable royalty, pursuant to 35 U.S.C § 284.

21. Said acts of VISA were done willfully, maliciously and intentionally and in bad faith, making this an exceptional case under 35 U.S.C. § 284. Plaintiffs are therefore entitled to, and hereby request, enhanced damages and statutory penalties.

22. Plaintiffs have incurred, and will continue to incur, attorneys' fees and court costs arising from the acts of VISA as alleged herein. Plaintiffs seek the recovery of attorneys' fees and costs as the prevailing party in this action pursuant to 35 U.S.C. §285.

## PRAYER FOR RELIEF

WHEREFORE, Calabrese/Stemer and C.N.S.C. pray for judgment as follows:

1. That this Honorable Court enter judgment in favor of Plaintiffs in the foregoing cause of action for patent infringement;

2. That Plaintiffs be awarded damages adequate to compensate them for VISA's infringement of the `310 Patent, but in no event less than a reasonable royalty, and enhanced statutory damages, as may be applicable, together with pre-judgment and post-judgment interest;

5

3. That Plaintiffs be awarded all gains, profits, and advantages derived by VISA by its infringement of the `310 Patent;

4. That this Court issue injunctive relief in the form of a permanent injunction enjoining VISA from offering services related to the claimed invention and from manufacturing, importing, selling, marketing and/or distributing any products suitable and used to infringe the claims of the `310 Patent, unless VISA obtains a license to the patent.

5. That Plaintiffs be awarded costs, disbursements and reasonable attorney fees under 35 U.S.C. § 285, according to proof, incurred in preparing for and pursuing this action;

6. For interest at the maximum legal rate on all damages from the date first incurred until paid, if applicable; and

7. For such other and further relief as this Court deems just and equitable under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

Respectfully submitted this 19 day of February 2009.

_____
Atty: Louis R. Gigliotti, Fla. Bar No. 71935
Lerner Greenberg Stemer LLP

Phone:   954-925-1100
Fax:     954-925-1101
Email:   office@patentusa.com

ATTORNEY FOR PLAINTIFFS CALABRESE STEMER LLC
and CHARGE NOTIFICATION SERVICES CORP., INC.
2445 Hollywood Blvd.
Hollywood, FL 33020

# VERIFICATION

**STATE OF FLORIDA** )

**COUNTY OF BROWARD** )

I, Werner H. Stemer, being first duly sworn, do now depose and say:

I am a managing member of Calabrese Stemer LLC and I am the secretary/treasurer of Charge Notification Services Corp., Inc., Plaintiffs in this action. I have read the foregoing Complaint and am familiar with its contents. I hereby state that the facts contained within are true and correct to the best of my personal knowledge, information and belief.

By: Werner H. Stemer, Mbr
For: Calabrese Stemer LLC

By: Werner H. Stemer, Secretary/Treasurer
For: Charge Notification Services Corp., Inc

[SEAL]

Subscribed and sworn to before me this 19 day of February 2009

Notary Public

My commission expires 6/6/11

8

# The United States of America

## The Director of the United States Patent and Trademark Office

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

## United States Patent

*Grants to the person(s) having title to this patent the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States of America or importing the invention into the United States of America for the term set forth below, subject to the payment of maintenance fees as provided by law.*

*If this application was filed prior to June 8, 1995, the term of this patent is the longer of seventeen years from the date of grant of this patent or twenty years from the earliest effective U.S. filing date of the application, subject to any statutory extension.*

*If this application was filed on or after June 8, 1995, the term of this patent is twenty years from the U.S. filing date, subject to any statutory extension. If the application contains a specific reference to an earlier filed application or applications under 35 U.S.C. 120, 121 or 365(c), the term of the patent is twenty years from the date on which the earliest application was filed, subject to any statutory extensions.*

*Director of the United States Patent and Trademark Office*

US007357310B2

## (12) United States Patent
Calabrese et al.

(10) Patent No.: **US 7,357,310 B2**
(45) Date of Patent: **Apr. 15, 2008**

(54) **MOBILE PHONE CHARGE CARD NOTIFICATION AND AUTHORIZATION METHOD**

(76) Inventors: **Gerry Calabrese**, 15951 SW. 41st St., Suite 600, Fort Lauderdale, FL (US) 33331; **Werner Stemer**, 1008 SW. 5th Pl., Fort Lauderdale, FL (US) 33312

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 2 days.

(21) Appl. No.: **11/077,783**

(22) Filed: **Mar. 11, 2005**

(65) **Prior Publication Data**
US 2006/0202025 A1    Sep. 14, 2006

(51) Int. Cl.
*G06K 5/00*    (2006.01)
(52) U.S. Cl. .................................. 235/380; 235/383
(58) Field of Classification Search ............... 235/379, 235/380, 383; 705/64, 75
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| 5,221,838 | A  | * | 6/1993  | Gutman et al. ............ 235/379 |
| 5,359,182 | A  | * | 10/1994 | Schilling .................... 235/380 |
| 5,521,363 | A  | * | 5/1996  | Tannenbaum ............... 235/379 |
| 6,366,893 | B2 | * | 4/2002  | Hannula et al. ............. 705/40 |
| 6,442,532 | B1 | * | 8/2002  | Kawan ...................... 705/36 R |
| 6,494,367 | B1 | * | 12/2002 | Zacharias ................... 235/382 |
| 6,726,098 | B2 | * | 4/2004  | Schilling .................... 235/380 |
| 6,754,636 | B1 | * | 6/2004  | Walker et al. ............... 705/26 |
| 7,024,396 | B2 | * | 4/2006  | Woodward ................... 705/71 |
| 7,181,432 | B2 | * | 2/2007  | Wells et al. .................. 705/64 |
| 2002/0035539 | A1 | * | 3/2002 | O'Connell ................... 705/39 |
| 2002/0107755 | A1 | * | 8/2002 | Steed et al. .................. 705/26 |
| 2002/0107791 | A1 | * | 8/2002 | Nobrega et al. ............. 705/39 |

* cited by examiner

*Primary Examiner*—Ahshik Kim

(57) **ABSTRACT**

An added level of security is added to charge card transactions. Upon presenting a credit card for a purchase, for example, the cardholder receives a message on his cell phone that a charge authorization request has been received. The cardholder may also be prompted to reply with a password or a PIN, so as to add a second security authorization.

**4 Claims, 2 Drawing Sheets**





FIG. 1



FIG. 2

# MOBILE PHONE CHARGE CARD NOTIFICATION AND AUTHORIZATION METHOD

## BACKGROUND OF THE INVENTION

### Field of the Invention

The invention lies in the financial transaction processing field. More specifically, the invention relates to credit and debit transactions and to related charge notification and charge authorization.

Credit cards and charge cards have become the primary vehicle by which payments for consumer services and consumer goods are transacted. In today's environment, credit payments are authorized at the point of sale (POS) and the authorization is provided by the cardholder's signature on a receipt. Often, the transaction is performed under considerable time pressure (e.g., in a long cash-out line) and mistakes are only recognized after the transaction has been completed. The consumer may, for example, have been charged too much, and he may have authorized the incorrect amount. As many consumers know, correcting such simple mistakes is not at all simple and the correction is time consuming and it is an expensive service for the credit card and credit clearing houses to maintain.

Mistakes such as the foregoing, however, are not the main reason for considerable losses. Often, incorrect or non-authorized charges are effected because of fraudulent or even innocent mistakes that could have been avoided, had better authorization security been assured. It is well known that charge errors and charge fraud causes millions of dollars in losses in the United States alone.

Extraneous authorization security, on the other hand, may be too intrusive in many cases and may even have a negative impact on the transaction.

## SUMMARY OF THE INVENTION

It is accordingly an object of the invention to provide a credit card transaction notification and authorization method, which overcomes the above-mentioned disadvantages of the heretofore-known devices and methods of this general type and which provides for a non-intrusive, user-selectable notification and authorization system for credit card transactions.

With the foregoing and other objects in view there is provided, in accordance with the invention, a payment authorization method, which comprises:

gathering, at a merchant's, account information for payment of a customer's purchase;

transmitting an authorization request to a financial authorization system requesting payment authorization for the customer's purchase, the authorization request including the account information;

notifying the customer by sending a message to a wireless device carried upon the customer.

In accordance with an added feature of the invention, the gathering step comprises swiping a card presented by the customer and containing the account information.

With the above and other objects in view there is also provided, in accordance with a second embodiment of the invention, a payment authorization method, which comprises:

gathering, at a merchant's, account information for payment of a customer's purchase;

transmitting an authorization request to a financial authorization system requesting payment authorization for the customer's purchase, the authorization request including the account information;

calling a wireless device associated with the customer and prompting the customer for confirmation or refusal of the transaction; and

processing the authorization request in accordance with the customer's response by either refusing the transaction or processing the purchase.

In accordance with an alternative implementation of the invention the customer is required to enter their personal identifier (e.g., a PIN) upon being prompted. A proper PIN response is considered an authorization, while an incorrect PIN or no response at all is considered a refusal.

Other features which are considered as characteristic for the invention are set forth in the appended claims.

Although the invention is illustrated and described herein as embodied in a credit card transaction notification and authorization system, it is nevertheless not intended to be limited to the details shown, since various modifications and structural changes may be made therein without departing from the spirit of the invention and within the scope and range of equivalents of the claims.

The construction of the invention, however, together with additional objects and advantages thereof will be best understood from the following description of the specific embodiment when read in connection with the accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a schematic diagram illustrating a transaction according to the invention, in which the customer is notified immediately during the transaction; and

FIG. 2 is a flow diagram illustrating a method for charge request processing according to the invention.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to the figures of the drawing in detail and first, particularly, to FIG. 1 thereof, there is seen a simplified process stream in a cash-less sales transaction. A charge card 1 is swiped at a magnetic card reader 2 at a merchant terminal 3, or the card number is manually entered at the merchant terminal 3. The latter may represent a store, it may be a teller or an automated teller machine (ATM), or it may be a virtual terminal in an internet-type transaction. The cardholder, or the person swiping the card, may now be prompted to select a debit transaction or a credit transaction on the merchant terminal 3. If debit is selected, the cardholder enters the PIN associated with the card or with the account. If credit is selected, the cardholder is requested to sign for the purchase.

Prior to the customer's signing for the purchase, the merchant terminal 3 connects, through a modem 5, to an acquirer 6. The latter obtains the information from the modem 5 and checks against its data sources whether or not the transaction should be authorized. At the same time, a corresponding customer profile is checked as to the customer's set preferences concerning the notification/authorization options according to the invention.

Here, the customer's profile is set to simple "notification," which means that the system only notifies the cardholder by sending a message to his wireless device (e.g., cell phone). The message may be an audible message such as, for

example, "% amount % charged on % date % at % merchant name %", or it may be an SMS (short message service) sent to the customer's phone. The customer's profile, however, may be set to any of several other options. For instance, the profile may be set to a simple notification, as above, followed by a prompt to confirm the purchase. The confirmation, again, may take any of several forms. For example, a simple "1" in answer to the confirmation request may be a code for authorization and a "2" may be a refusal. Or else, the customer may be prompted to enter a PIN or any set password which is stored in the customer profile. If the profile is set to authorization, the payment authorization and the payment guarantee are not provided. That is, the card transaction is declined at the merchant terminal 3.

The simple notification, of course, does not add any time to the transaction. If confirmation is required, the transaction is slightly extended. The added security, however, may well justify the delay. In either case, it is up to the customer to choose and set his profile accordingly.

The possible delay may be avoided by way of a further modification of the invention. Here, we provide for preauthorization when a charge request is imminent. By way of example: waiting in a checkout line, the customer may call "ahead" and provide preauthorization for the impending purchase. This may be entirely automated. The system will prompt the customer to identify a period of time for which the authorization is valid. For example, the purchase may be expected within 10 minutes and, accordingly, the customer will select, say, the half-hour authorization option. The system may also prompt for a maximum amount that would be authorized. For example, the purchase may be expected to cost $50.00 and, accordingly, the customer may set the maximum authorized amount to, say, $100.00. Proper preauthorization parameters may be empirically or statistically developed and the system may be set accordingly.

The process flow may be best understood by reference to a realistic example in a restaurant environment: The server has presented the customer a check, the customer has briefly reviewed the check, found the total amount of, say, $40.00 agreeable, and handed the server the check and the credit card. The server then moves to a backroom and processes the transaction, by swiping the card and entering the amount of $40.00 into a register terminal. Immediately upon receiving the authorization request, the credit card authorization system (e.g., the acquirer 6) sends an SMS message to the customer's cell phone. The customer receives the message telling him that the restaurant has requested authorization for a charge of $40.00. This happens well before the server returns with the transaction slip requesting the customer's signature.

When the final transaction is posted—the customer may have added a tip and the actual total may come out to, say, $48.00—the customer may or may not be notified again. This depends on the profile associated with the customer.

In the foregoing scenario, unfortunately, the customer's credit card is less than safe. It is possible, for example, for the server to swipe the card for one or two additional transactions, to be posted the next day or the next week. With the invention, the additionally swiped transactions would not be authorized, because the customer would decline. If only notification were requested according to the profile, the customer would still be alerted to the questionable transaction and could thus take the necessary countermeasure steps. Still in the same scenario, the credit card number and the name could be copied down very quickly. In addition, the three-digit security code could be copied down as well. The customer's credit card, while physically long returned to the customer, could now be used to make online and telephone purchases.

It will be understood that the foregoing scenario is merely exemplary and is in no way limiting with regard to the application of the instant invention (nor is it intended to be disparaging to the restaurant industry). Indeed, there exist numerous situations where proper customer notification and customer authorization may prevent fraudulent transactions and even wrongful transactions that are based on honest mistakes.

It will also be understood that the foregoing description is not only applicable to credit card processing, but also to debit and ATM card processing. The term "charge card" encompasses all of these cards and equivalent or similar payment mechanisms. For example, if cash is requested at an ATM (automated teller machine), the customer may be prompted to authorize the dispensing of the given amount via his cell phone, in addition to entering the PIN at the ATM terminal. In a further modification, however, it is possible to dispense with the prompt for the PIN entry at the terminal altogether and to only require the entry of a PIN through the customer's cell phone.

This leads to yet another modification or, rather, to a further application of the novel system according to the invention. It is possible for the customer profile to be set to notify (and/or require confirmation from) a third party. Such third party notification/confirmation may be beneficial in a parent/child relationship, or in an employer/employee relationship. The cell phone (or beeper, or equivalent wireless device) to which the notification is to be sent is set by the cardholder and it may be freely changed through secure access (e.g., by telephone through customer service, online through the Internet).

Referring now briefly to FIG. 2, after the required information has been gathered at the merchant's (POS, ATM, online, telephone, etc.), an authorization request or charge request 10 is sent to the financial processing facility 6. There, the request is processed in a conventional manner as indicated by the boxes 11 and 12. At the same time, the customer profile associated with the account number is checked at 13. The customer profile may be set to "no action" or it may not be set at all. In that case, the right-hand branch is immediately terminated. If the profile is set to Notify Only, the query 14 returns a corresponding response and the customer's wireless device (e.g., cell phone or beeper) is notified at 15. The message may be an SMS message or it may be a voice announcement, depending on the customer profile. Once the notification has been sent at 15, a flag is set at 16.

If the customer profile is set to Notify & Confirm, the message to the customer's wireless device contains a message as above and a prompt for confirmation at 17. The confirmation may be a simple reply to an SMS message, it may consist of any key depressed (during a live call), or it may be a full fledged PIN or password. In a further modification, which adds yet another level of security, the customer may be prompted for a voice reply and the reply may then be subjected to "voice recognition" by comparing a frequency hysteresis chart associated with the customer to the voice reply.

If the customer (or the person in the possession of the wireless device) returns the proper response, the query 18 directs the process flow to the box 16, where the confirm flag is once more set to "1." If no response is received, or if an incorrect response is received, the confirm flag is set to "0" at 19.

At approximately the same time as the confirm flag is set to "1" or "0"—signifying proper or improper notification and/or proper customer side authorization—the financial transaction processing also has reached an end point at **20**. If the transaction has been rejected, the merchant is notified accordingly by refusing the transaction at **21**. If the financial transaction has been authorized at **20**, the process queries whether or not the confirm flag has been set ("1") to indicate that the customer has been notified of the transaction and/or has authorized the transaction at **22**. If the flag is not set ("0"), the transaction at the merchant's is refused. If the flag is set, the charge is authorized.

We claim:

1. A payment authorization method, which comprises:
    gathering, at a merchant's, account information for payment of a customer's purchase;
    transmitting an authorization request to a financial authorization system requesting payment authorization for the customer's purchase via a first transmission channel;
    notifying the customer that the authorization request has been received by transmitting, via a second transmission channel independent of and separate from the first transmission channel between the merchant's and the financial institution, a notification to a communications device associated with the customer; and
    processing the transaction for payment authorization substantially without requiring a direct communications link between the communications device associated with the customer and the merchant's and substantially without requiring a response to the notification from the communications device associated with the customer.

2. The method according to claim 1, wherein the authorization request includes the account information and a monetary amount, and the notification to the communications device associated with the customer includes the monetary amount.

3. In a charge card payment authorization method, wherein a charge is requested at a merchant's, account information for payment of a customer's purchase is acquired at the merchant's, an authorization request is transmitted from a terminal associated with the merchant's to a remote charge processing facility, and the charge request is processed, the improvement which comprises: processing the charge request substantially exclusively through communication between the merchant's and the remote processing facility and substantially without requiring activity on the part of the customer, and transmitting a notification of the charge request to a wireless device associated with the customer no later than immediately after authorizing the charge request.

4. The method according to claim 3, which comprises transmitting the notification immediately upon receiving the charge request and prior to authorizing the charge request.

\* \* \* \* \*



Visa Inc.

About Visa Inc.   Products   Security   Careers   Media Center   Investor Relations   [Search Keywords] [GO]

## Press Releases

Printable Format

- Press Releases
- Media Contacts
- Statistics
- Fact Sheets
- Downloadable Assets
- Press Kit
- Speeches & Presentations
- Interchange
  - Understanding Visa Transactions
  - Economics of the Visa System
  - Facts About Interchange
  - Interchange FAQ

### Visa and Leading North American Banks Launch Transaction Notification Pilot

*"Early Warning" Service Gives Cardholders Extra Confidence and Security*

**SAN FRANCISCO, CA, August 18, 2008**

Visa (NYSE:V), the global leader in payments, and eight leading North American financial institutions - PNC Bank, SunTrust Bank, U.S. Bank, Wachovia, and Wells Fargo in the United States, and Royal Bank of Canada, TD Bank Financial Group, and Vancity in Canada - have agreed to initiate a pilot program with up to a total of 2,000 participants to test the delivery of real-time notification alerts on Visa accounts.

The program, which is being conducted in cooperation with some of the largest North American issuers, is designed to enhance the consumer payment experience by alerting cardholders in real-time or near real-time of transaction activity on their Visa account - typically within seconds rather than hours or days. Participants will receive notification alerts from Visa through email or Short Message Service (SMS) delivered directly to their mobile devices.

Based on Visa's state-of-the-art transaction authorization system, and its ability to analyze and conduct risk score transactions "in-flight," the service allows Visa cardholders to set thresholds that will trigger a transaction alert. Alert types that Visa cardholders may choose in the pilot include:

- cash withdrawal from an ATM machine;
- a transaction initiated cross border;
- an Internet or telephone transaction and
- a transaction that exceeds an amount that has been chosen by the cardholder.

Through the alert received via email or SMS text, cardholders can verify the transaction details, and if the transaction appears to be irregular, can immediately contact their bank to help stop further transactions on the card. The service is designed to help cardholders keep closer track of their transactions and spending levels as they go about their daily routine. According to a recent Javelin Strategy & Research report, consumers view timely alerts as a valuable resource to help detect fraud.

"Information is power, especially when delivered in a timely manner," said Elizabeth Buse, Global Head of Product at Visa Inc. "Visa already delivers real-time transaction risk scores to financial institutions, and we are now empowering cardholders in this pilot with real-time transaction alerts. Participating Visa cardholders can typically receive alerts before they walk out of the store, rather than hours or even days later."

**Visa's Mobile Platform**

Visa began testing mobile notifications in 2007, beginning with an internal employee pilot. Mobile alerts are part of a suite of mobile services that are supported by the Visa Mobile Platform, which was created to help financial institutions tap into mobile technology to deliver enhanced products and services. This effort comes as consumers globally are relying on their mobile phones to do far more than just handle calls. A recent Pew Research Centre report found that more than 80 percent of consumers between the ages of 18 and 49 use their mobile devices to engage in activities such as sending text messages, taking pictures and accessing the Internet.

Worldwide, Visa's Mobile Platform is supporting mobile trials of:

mobile payments made both at the point of sale (using Visa payWave technology) and away from it by permitting remote payments via text message or the Internet;

http://www.corporate.visa.com/md/nr/press828.jsp                    2/19/2009

value-added services, which in addition to account notification can include the delivery of offers, coupons and rewards directly to a consumer's mobile device;

mobile acceptance, enabling mobile devices to accept Visa payments, thus extending the flexibility of merchants and

money transfer, which allows cardholders to use their mobile device to electronically transfer money to family and friends around the world directly from their Visa accounts.

Visa has announced mobile trials and commercial rollouts in Brazil, Canada, Germany, India, Malaysia, South Korea, Taiwan, the United Kingdom and the United States.

###

**About Visa Inc.:** Visa Inc. operates the world's largest retail electronic payments network providing processing services and payment product platforms. This includes consumer credit, debit, prepaid and commercial payments, which are offered under the Visa, Visa Electron, Interlink and PLUS brands. Visa enjoys unsurpassed acceptance around the world, and Visa/PLUS is one of the world's largest global ATM networks, offering cash access in local currency in more than 170 countries. For more information, visit www.corporate.visa.com

**Contact:**
Sandra Chu
Visa Inc.
Tel: +1 415 932 2564
E-mail: globalmedia@visa.com

**Go back to Press Releases**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: **Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS** Calabrese Stemer LLC, + Change Notification Services Corp.

**DEFENDANTS** Visa, Inc.

(b) County of Residence of First Listed Plaintiff: Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Louis R. Gigliotti
Lerner Greenberg Stemer, LLP
2445 Hollywood Blvd.
Hollywood FL 33020

Attorneys (If Known)

(d) Check County Where Action Arose: ☐ MIAMI-DADE  ☐ MONROE  ☒ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

0:09CV60269-Hurley-Hopkins

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury - Product Liability | | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | IMMIGRATION | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page):
a) Re-filed Case ☐ YES ☐ NO     b) Related Cases ☐ YES ☐ NO
JUDGE                                                   DOCKET NUMBER

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):
35 USC §271, Patent Infringement

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
DATE 2/19/09

FOR OFFICE USE ONLY
AMOUNT 350   RECEIPT # 545513   IFP